Alice STANBACK et al., Plaintiffs,

v.

Patricia HARRIS et al., Defendants.

Civ. A. No. 77–0583.

United States District Court, District of Columbia.

June 9, 1977.

Robinwyn Dietrich Lewis, Arlington, David V. Marshall, Institute of Law & Aging, George Washington University, Washington, D. C., for plaintiffs.

Earl J. Silbert, U. S. Atty., Robert N. Ford, Stephen S. Cowen, Asst. U. S. Attys., Washington, D. C., for defendant Patricia Harris.

Cameron M. Blake, Arent, Fox, Kintner, Plotkin & Kahn, Washington, D. C., for defendant Fort Lincoln New Town Corp.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

WADDY, District Judge.

Plaintiffs' Motion For A Preliminary Injunction was argued before the Court on June 3, 1977, following the submission by plaintiffs of supporting affidavits and a memorandum of points and authorities, and the separate submissions by defendant Harris and defendant Fort Lincoln New Town Corporation of opposing affidavits and memoranda. All of the parties had previously informed the Court that they had agreed not to present oral testimony, but instead intended to rely on their written submissions. Based upon the oral arguments, and the entire record herein, the Court makes the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. This is a civil action which seeks (1) to prevent further financial commitments to defendant Fort Lincoln New Town Corporation (Fort Lincoln) by defendant United States Department of Housing and Urban Development (HUD) for construction of Fort Lincoln Senior Village (Senior Village), (2) to enjoin HUD from entering into a Housing Assistance Payments contract with Fort Lincoln until Senior Village has been brought into compliance with the site requirements of the National Housing Act, 12 U.S.C. §§ 1701 *et seq.*, the United States Housing Act of 1937, 42 U.S.C. §§ 1401 *et seq.*, and enabling regulations, and (3) to compel Fort Lincoln to comply with the site requirements of the above-named statutes or, in the alternative, to compel Fort Lincoln to cease construction of Senior Village.

2. Plaintiffs Alice Stanback and Harry Belton are elderly residents of the District of Columbia. Both plaintiffs are eligible for low income housing and have been on the waiting list for publicly-assisted housing for a considerable period of time.

3. Defendant Patricia Harris is the Secretary of the Department of Housing and Urban Development.

4. Defendant Fort Lincoln New Town Corporation is a District of Columbia corporation and is the general partner of the limited partnership known as Fort Lincoln Senior Village Associates No. 1, which partnership owns Fort Lincoln Senior Village.

5. The United States Housing Act of 1937, as amended, authorizes the expenditure of federal funds and credit "to assist the several states and their political subdivisions to remedy the unsafe and unsanitary housing conditions and the acute shortage of decent, safe, and sanitary dwellings for families of low income." 42 U.S.C. § 1437. As amended by the Housing and Community Development Act of 1974, P.L. 93–383, 88 Stat. 662–666, the United States Housing Act of 1937, *inter alia*, provides for a new housing program for lower-income families, called the Section 8 housing assistance payments program, for "the purpose of aiding lower-income families in obtaining a decent place to live and of promoting economically mixed housing . . . " 42 U.S.C. § 1437f(a). Under Section 8(b)(2) of the amended Act, the Secretary of the Department of Housing and Urban Development is authorized to make housing assistance payments, on behalf of eligible families, to owners or prospective owners who agree to construct housing for occupancy by lower-income families. 42 U.S.C. § 1734f (b)(2).

6. Section 213 of the Housing and Community Development Act of 1974, 42 U.S.C. § 1439, as implemented by 24 C.F.R. § 880.-208(c), provides an opportunity for a unit of local government with an approved housing assistance plan to object to HUD approval of applications submitted under various housing programs, including the Section 8 program, on the ground that such applications are inconsistent with the locality's housing assistance plan. Under Section 213(a), HUD must notify the chief executive of the unit of local government, in which the proposed assistance is to be provided that an application is under consideration, and afford the locality the opportunity to object during a thirty-day period beginning on the date of the notification.

7. In processing Section 8 proposals for approval, HUD field offices are guided by implementing regulations at 24 C.F.R. Part 880 and the Section 8 Housing Assistance Payments Program—New Construction Processing Handbook, 7420.1 (April 1975), revised by Transmittal No. 4, 7420.1 CHG (November 16, 1976). (Exhibit G to the Clay Affidavit). The regulations set forth the elements of the Section 8 new construction program, including the roles and responsibilities of HUD, public housing agencies, developers, owners, and eligible families. Briefly, a HUD Area Office advertises for proposals to be submitted by the owners or developers. Preliminary proposals which meet the Section 8 program requirements, including site, neighborhood, and environmental requirements, are selected for further development into final proposals. If a final proposal is acceptable to HUD, an agreement will be executed which provides that upon completion of the project the owner and HUD will enter into a housing assistance payments contract under which HUD makes payments on behalf of the eligible lower-income families.

8. 24 C.F.R. § 880.112 provides that sites for new construction projects must be approved by HUD as meeting various site and neighborhood standards. Section 880.112(g) establishes the following standard:

> The housing shall be accessible to social, recreational, educational, commercial, and health facilities and services, and other municipal facilities and services that are at least equivalent to those typically found in neighborhoods consisting largely of unsubsidized, standard housing of similar market rents.

9. The National Housing Act, 12 U.S.C. §§ 1701 *et seq.*, provides, *inter alia*, for a program of mortgage insurance to finance various types of housing projects. Section 221(d)(4) of the Act, 12 U.S.C. § 1715*l*(d)(4), establishes a program for the financing of multifamily rental housing for moderate income families with a priority to those displaced by urban renewal or other governmental action. Elderly (62 years of age or older), physically handicapped, and dis-

placed persons are considered families under the program. 12 U.S.C. § 1715l(f).

10. Regulations implementing the Section 221(d)(4) program are found at 24 C.F.R. Part 221. Under 24 C.F.R. § 221.502, a project sponsor must first submit an application for the issuance of a site appraisal and market analysis letter (SAMA). Also, an application for a conditional commitment or form commitment for insurance of a mortgage on a project must be submitted by an approved mortgagee and by the sponsor of the project. The issuance of a SAMA letter indicates completion of the site appraisal and market analysis stage to determine initial acceptability of the site and recognition of a specific market need. See 24 C.F.R. § 221.509(a)(1). The separate issuance of a firm commitment evidences HUD approval of the application for insurance. The insurance may cover advances of mortgage money made during construction of the project. See 24 C.F.R. § 221.509(a)(3).

11. The Senior Citizens Housing Act of 1962, 12 U.S.C. § 1701r, provides, inter alia, for additional funds for elderly housing by amending the direct loan program of the Housing Act of 1959, 12 U.S.C. § 1701q and the farm housing program of the Housing Act of 1949, 42 U.S.C. § 1471. The Senior Citizens Housing Act states the congressional finding that senior citizens need housing "planned and designed to include features necessary to the safety and convenience of the occupants in a suitable neighborhood environment." 12 U.S.C. § 1701r.

12. Senior Village is a 187-unit apartment complex designed to provide housing for the elderly. Pursuant to the National Housing Act and implementing regulations, HUD insured the project's mortgage. Further, pursuant to the United States Housing Act of 1937, as amended, and implementing regulations, HUD entered into an agreement with Fort Lincoln to provide Section 8 rental payments assistance for 100% of the Senior Village units. This funding will permit eligible tenants to reside in the project while paying no more than 25% of their annual income in rental payments.

13. In approving mortgage insurance and Section 8 housing assistance payments, HUD considered the existing transportation facilities, other facilities in the area, and the projected facilities in the area. In addition, in accordance with Section 213 of the Housing and Community Development Act of 1974, HUD considered the position of the District of Columbia, as set forth in the District's letter of November 21, 1975, that the Senior Village proposal was consistent with the District's Housing Assistance Plan. Finally, HUD also considered the necessity for housing for senior citizens in the District of Columbia.

14. The record indicates that Senior Village will be completed and ready for occupancy in July, 1977. Although no extensive advertising has been undertaken by defendant Fort Lincoln, over 100 applications have already been received from elderly individuals wishing to reside in the Senior Village building.

15. Defendants anticipate that by August, 1977, an extensive medical facility (the Fort Lincoln Family Practice Center) and a competitively-priced food market now under construction on the ground floor of the Senior Village building will be completed and operational.

16. With respect to the question of transportation, upon which plaintiffs have focused, the Court finds that an existing shuttle-bus service now being used by residents of the adjacent District of Columbia elderly housing project will be available for use by residents of Senior Village. Although arrangements have not yet been finalized, the District of Columbia has also indicated that, if desired by the new residents of Senior Village, additional bus service could be provided to them on a comparable basis. In addition, currently available community public transportation will be increased and made more accessible to future residents of Senior Village at, or about the time of, the building's completion and occupancy. As shown by the two affidavits of Robert E. Sauer, Jr., Bus Operations Analyst for the Washington Metropolitan Area

Transit Authority ("Metro"), bus service convenient to Senior Village, which will travel to the Rhode Island Avenue Metro Station stopping at points in between, will commence operation on July 5, 1977. Services and facilities of all kinds are available in commercial establishments located at points that are served, or will be served, by this combination of transportation services.

17. The record further reflects that there is in fact a shortage of housing facilities available for senior citizens in the District of Columbia. Although plaintiffs themselves are eligible for housing assistance, they have been waiting for several years to find publicly-assisted housing adequate and suitable for them. It appears to the Court that to grant the preliminary injunction in this case would simply freeze the *status quo* of inadequate housing for the elderly in the District of Columbia and would injure elderly persons, rather than benefit them. Additionally, there has been no showing that the facilities that are presently available to these plaintiffs, who are not living in subsidized housing, are any better than the facilities that will exist at Fort Lincoln Senior Village when it is opened for occupancy.

18. The Court further finds that the issuance of a preliminary injunction could create a situation in which a default by Fort Lincoln might occur, forcing an assignment of the mortgage back to HUD and thereby further increasing public expenditures and administrative burdens. Furthermore, defendant Fort Lincoln could suffer considerable injury inasmuch as an injunction would conceivably stop not only the construction of the Senior Village, but also construction of the entire Fort Lincoln New Town project, or, at a minimum place it in serious jeopardy.

19. Finally, the Court concludes the public interest lies in providing public housing for the elderly of this community in suitable neighborhood environments with accessibility to health, commercial and community facilities. The facilities which are now, and which will be, accessible, including those which will be available when Senior Village and the Fort Lincoln New Town project are completed, satisfy the public interest. To stop the construction at this time, when Senior Village is nearing completion, would not be in the public interest.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the subject matter of this civil action under 28 U.S.C. § 1331 and 28 U.S.C. § 1361.

2. In order to obtain a preliminary injunction, the plaintiffs must make a strong showing that they are likely to prevail on the merits; that they have suffered, or will suffer, irreparable injury if the preliminary injunction is not granted; that no, or relatively little harm will result to others; and that the preliminary injunction is in the public interest. *Virginia Petroleum Jobbers Assn. v. F. P. C.*, 104 U.S.App.D.C. 106, 259 F.2d 921 (1958).

3. There is no dispute that the standard of review which this Court must use is whether HUD's actions were arbitrary, capricious, an abuse of discretion or otherwise not in compliance with law. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

4. Based upon this standard of review, and in view of the Court's findings, the Court concludes that plaintiffs have failed to make a strong showing that they are likely to prevail on the merits.

5. In addition, the Court concludes that plaintiffs have not shown that they will be irreparably injured if a preliminary injunction does not issue. To the contrary, the Court concludes that both defendants might be substantially harmed by the issuance of an injunction.

6. The Court further concludes that it would not be in the public interest to grant plaintiffs' motion for a preliminary injunction.

7. Plaintiffs have therefore not met the requirements of *Virginia Petroleum Jobbers Assn. v. F. P. C., supra*, and are not entitled to issuance of a preliminary injunction.

Accordingly, based on the foregoing Findings of Fact and Conclusions of Law, it is by the Court this 9th day of June, 1977,

ORDERED that plaintiffs' Motion For A Preliminary Injunction be, and hereby is, denied.