Barbara Ann EDGE, Edward Jacoby, Richard Cassel, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Samuel R. PIERCE, Jr., in his capacity as Secretary of the Department of Housing and Urban Development of the United States of America; Lutheran Housing, Inc.; Howard H. Leber; Pauline Thomas; Applied Housing Management, Inc., doing business as South Village 2; and Joan Millen, Defendants.

Civ. No. 82–51.

United States District Court, D. New Jersey.

June 15, 1982.

David Lazarus, Director of Litigation Community Health Law Project, East Orange, N. J., for plaintiffs.

Ann M. Sheadel, Dept. of Justice Civil Division, Suzanne Grealy Curt, Dept. of Housing & Urban Development, Washington, D. C., W. Hunt Dumont, U. S. Atty. by Jerome Simandle, Asst. U. S. Atty., Trenton, N. J., for defendant Samuel R. Pierce.

Lawrence T. Marinari, Marinari & Farkas, P. A., Trenton, N. J., for defendants Lutheran Housing, Inc., Howard H. Leber and Pauline Thomas.

Morton Stavis, Hoboken, N. J., for defendants Applied Housing Management, Inc. and Joan Millen.

## OPINION

ANNE E. THOMPSON, District Judge.

This case, which the named plaintiffs propose to maintain as a class action, is brought against Samuel Pierce, Secretary of Housing and Urban Development, and against entities and individuals involved in the so-called "Section 202" housing program for the elderly and handicapped. It is the plaintiffs' contention that the Secretary has interpreted, and the other defendants have applied the applicable federal law in a discriminatory fashion. The case is before me today on plaintiffs' motion for certain preliminary injunctive relief. The following constitutes the court's findings of fact and conclusions of law, pursuant to *Fed.R.Civ.P.* 52(a), arrived at after consideration of the record in this case, the briefs and oral argument of counsel.

In *City of Boston v. Harris*, 619 F.2d 87, 89–90 (1st Cir. 1980), the First Circuit described the Section 202 program:

[S]ection 202 of the Housing Act of 1959, 12 U.S.C. § 1701q (1976), allows HUD to make 3% loans for 50 year terms to eligible developers to provide housing facilities for elderly or handicapped families with inadequate income to pay private market housing rentals. To start the program Congress set up a revolving fund, *id.* at § 1701q(a)(4), which depends upon repayment of mortgages or Congressional appropriations for its continued success. Section 202 makes money available for mortgages which is otherwise unavailable. *Id.* at section 1701q(a)(2)(A). In order to assure that section 202 objectives are met, HUD requires an applicant to enter into a regulatory agreement providing that the Secretary of HUD shall establish rental levels and tenant eligibility.

Defendant Lutheran Housing, Inc. is a non-profit corporation which operates a Section 202 housing project called Luther Arms Housing Development, located at 323 South Broad Street in Trenton. Defendant Applied Housing Management, Inc. operates a housing project for the elderly and handicapped called South Village 2, located on Stokely Avenue in Trenton. South Village 2 was not organized under Section 202, it appears, but rather by means of the federal mortgage insurance provided for in Section 221(d) of the National Housing Act. 12 U.S.C. § 1715*l*(d); *City of Boston, supra,* 619 F.2d at 90. This appears to be a distinction without a difference for the purposes of this case, however, since as with Section 202 projects, the Secretary of HUD has "broad discretion to manage and control the rental housing." *Id.*

In their complaint filed on January 5, 1982, the plaintiffs claim that they are persons who are or who are perceived to be chronically mentally ill. It is the plaintiffs' allegation that they have been or will be denied the opportunity to live in either Luther Arms or South Village 2 solely because

of their mental illness. Plaintiffs also believe that they have thereby been the victims of a national policy promulgated by HUD and put in effect at all Section 202 housing projects. Plaintiffs believe that HUD has interpreted the applicable federal statutes and regulations to exclude the mentally ill from residence in Section 202 projects. [Verified complaint, ¶ 26].

Plaintiff Barbara Edge is presently a resident of Luther Arms, having resided there since January 1980.[1] Although the administrators of Luther Arms, in reliance upon their understanding of HUD regulations, made some attempt in 1981 to have Ms. Edge vacate her apartment, these efforts have apparently ceased, at least for the time being. Plaintiff Richard Cassel, who is presently living in a boarding home in Trenton, believes that he would enjoy and appreciate living at South Village 2. [Verified complaint, ¶¶ 39, 40, 43, 44, 45]. Although he has applied for residence at South Village 2, he claims that he "feels that his application will be denied due to his not being elderly or having a physical disability but solely because he has a psychiatric disability." [Verified complaint, ¶ 46]. Plaintiff Edward Jacoby currently lives in a government subsidized apartment in Trenton; he has applied on more than one occasion for residence at Luther Arms. He claims he has been turned down because the administrators tell him that they cannot house persons who are chronically mentally ill.

Plaintiffs allege that the refusal or potential refusal to admit them by those administering Luther Arms and South Village 2 violates various of their rights. Furthermore, they claim that the refusals were based on a nationwide HUD policy, which bars all persons who are or who are perceived to be chronically mentally ill from residence in Section 202 projects. This also transgresses against rights, both of the

---

1. Ms. Edge was apparently given shelter at Luther Arms following a fire; she later entered into a lease with the project.

plaintiffs and of those whom they claim to represent.

Plaintiffs set forth the following causes of action: first, they claim that the defendants' actions violate Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, which prohibits discrimination against an "otherwise qualified handicapped individual" in federally funded programs "solely by reason of his handicap." [Verified complaint, ¶ 65]. Second, plaintiffs claim that the defendants' actions violate their due process rights under the Fifth Amendment. [Verified complaint, ¶ 66]. Third, plaintiffs claim that their right to Equal Protection has been violated. [Verified complaint, ¶ 67]. Plaintiffs claim that the defendants have conspired to deprive them of the equal protection of the laws, violating 42 U.S.C. § 1985(3). Finally, plaintiffs have pleaded a number of pendent state law claims, including allegations of violations of the New Jersey State Constitution, the New Jersey Law Against Discrimination, and the New Jersey Fair Eviction Notice Statute. [Verified complaint, ¶¶ 69, 70].

The plaintiffs are before the court today to request the issuance of a preliminary injunction. The terms of the injunction which they seek would do the following: The Luther Arms defendants would be enjoined from evicting plaintiff Edge. All local defendants would be directed to solicit, maintain and accept applications for housing from persons who are chronically mentally ill. Defendant Pierce would be directed to order all Section 202 projects to solicit, maintain and accept housing applications from persons who are chronically mentally ill.

## APPLICABLE LAW

■ The standard by which we must judge the plaintiffs' request for a preliminary injunction has been most recently expressed by the Third Circuit in *Kershner v. Mazurkiewicz*, 670 F.2d 440, 443 (3d Cir. 1982):

> A preliminary injunction is not granted as a matter of right. *Eli Lilly & Co. v. Premo Pharmaceutical Laboratories, Inc.*, 630 F.2d 120, 136 (3d Cir.), *cert. denied*,

449 U.S. 1014 [101 S.Ct. 573, 66 L.Ed.2d 473] (1980). It may be granted, however, if the moving party demonstrates both a reasonable probability of eventual success in the litigation and that the party "will be irreparably injured *pendente lite* if relief is not granted." *Id.* at 136; *Kennecott Corp. v. Smith*, 637 F.2d 181, 187 (3d Cir. 1980). The trial court may also consider the possibility of harm to other interested persons from the grant or denial of the injunction, as well as harm to the public interest. *Eli Lilly & Co.*, 630 F.2d at 136. The grant or denial of a preliminary injunction is committed to the sound discretion of the trial judge, who must balance all of these factors in making a decision. *Penn Galvanizing Co. v. Lukens Steel Co.*, 468 F.2d 1021, 1023 (3d Cir. 1972).

In a case such as the one at bar, where the plaintiff is seeking a mandatory injunction, as opposed to a prohibitory injunction, the burden is accordingly greater; such mandatory injunctions are generally disfavored. *Punnett v. Carter*, 621 F.2d 578 (3d Cir. 1980); *United States v. Price*, 523 F.Supp. 1055, 1067 (D.N.J.1981).

## 1. PROBABILITY OF SUCCESS ON THE MERITS

From our examination of plaintiffs' complaint and the materials which they have submitted in support of their application for a preliminary injunction, it appears that plaintiffs contend that HUD maintains a nationwide policy of excluding all chronically mentally ill persons from residence in Section 202 projects. It is plaintiffs' position that such a policy amounts to a violation of Section 202.

Materials submitted by the defendants, however, indicate that plaintiffs may be incorrect in their allegation of a nationwide policy excluding mentally ill persons from Section 202 projects. In 1978, as part of the Housing and Community Development Amendments of 1978, Congress addressed the fact that "there has been some confusion over whether chronically mentally ill persons are eligible for section 202 hous-

ing." H.R.Conf.Rep.No.95–1792, *reprinted in* [1978] U.S.Code Cong. & Ad.News 4773, 4891. The Congressional conferees on this bill made it clear that Congress had never intended to exclude chronically mentally ill persons from § 202 projects. "However," their report went on to note,

> the conferees are aware that the housing needs of some chronically mentally ill persons may differ from those of other handicapped persons and that [HUD] has not heretofore had experience with providing housing for such persons. The conferees therefore expect that the Secretary will promptly develop criteria and standards for housing for the chronically mentally ill so that such persons can become active participants in the program. In this regard, the conferees believe that the current HUD demonstration can provide an ongoing useful basis for evaluating such criteria and standards.

*Id.*

The Declaration of James J. Tahash [filed April 23, 1982], Director of the Program Planning Division in the Office of Multifamily Housing Management and Occupancy of the Department of HUD has been submitted by the defendants. In this affidavit, Mr. Tahash sets forth the efforts made by HUD to develop Section 202 housing projects suitable for the needs of the chronically mentally ill. These individuals often need personnel and services very different from the requirements of the elderly and the physically handicapped. After several years of planning and analysis, HUD now has some 35 operating Section 202 demonstration projects located across the country. These Section 202 homes are specifically designed to deal with the needs of the chronically mentally ill. Because Section 202 requires that the handicapped person's ability to live independently must be "improved" by his residence in Section 202 housing, the defendants take the position here that the plaintiffs in the case at bar are not eligible handicapped persons under Section 202, for purposes of residency at Luther Arms and South Village 2 because those facilities are not designed to accommodate the mentally ill. In any event, the Tahash affidavit establishes that HUD does not follow a nationwide policy of excluding chronically mentally ill persons from residence in all § 202 projects. Instead, HUD's policy is to include the chronically mentally ill only in the § 202 projects which have been planned with their needs in mind. Inasmuch as there was until fairly recently some doubt about the eligibility of the chronically mentally ill under Section 202, such specialized facilities are, understandably, not as available as Section 202 housing for the elderly and physically handicapped.

With this background, we may turn to a consideration of the probability of success on the merits of plaintiffs' claims under Section 504 of the Rehabilitation Act. In *Doe v. New York University*, 666 F.2d 761, 774 (2d Cir. 1981), the court set forth the elements of a § 504 claim:

> In order to make out a case based on a violation of § 504 a plaintiff must prove (1) that she is a "handicapped person" under the Act, (2) that she is "otherwise qualified" for the position sought, (3) that she is being excluded from the position solely by reason of her handicap, and (4) that the position exists as part of a program or activity receiving Federal financial assistance.

The probability of plaintiffs' success on the merits of their § 504 claim can be gauged by turning immediately to a consideration of the "otherwise qualified" requirement of proof. Relying on the Supreme Court's decision in *Southeastern Community College v. Davis*, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979), the Second Circuit in *Doe* discussed this part of § 504 as follows:

> Turning to the Act's term, "otherwise qualified handicapped individual," it is now clear that this refers to a person who is qualified *in spite of* her handicap and that an institution is not required to disregard the disabilities of a handicapped applicant, provided the handicap is relevant to reasonable qualifications for acceptance, or to make substantial modifications in its reasonable standards or programs to accommodate handicapped indi-

viduals but may take an individual's handicap into consideration, along with all other relevant factors, in determining whether she is qualified for admission ... *[I]f the handicap could reasonably be viewed as posing a substantial risk that the applicant would be unable to meet its reasonable standards, the institution is not obligated by the Act to alter, dilute or bend them to admit the handicapped applicant.*

*Id.,* 666 F.2d at 775; [latter emphasis added], *see also* p. 776 ("The pivotal issue is not whether the handicap was considered but whether ... it provides a reasonable basis for finding the plaintiff not to be qualified ...").

The defendants make the argument that they have denied chronically mentally ill persons admission to some Section 202 projects only because those projects are not organized and equipped in a fashion which will improve the individual's ability to live independently. If this is so, then it appears that there may be no violation of Section 504, as well as no violation of Section 202. The probability of success on the merits of plaintiffs' Section 504 claim required in order to prevail on this motion appears to be lacking.

It also appears that plaintiffs have not demonstrated their likelihood of success on the merits with regard to their constitutional claims, as well. The defendants have argued that the lack of facilities and personnel intended to treat the chronically mentally handicapped at Luther Arms and South Village 2 dictate that the plaintiffs could not benefit from residence in the way required by Section 202. [See Diak affidavit, filed April 23, 1982]. Plaintiffs, naturally, dispute this in their complaint. However, since the qualification of these plaintiffs for this Section 202 housing is at this point at least questionable, it does not appear that it is "reasonably probable" that plaintiffs will prevail on their claim of being deprived of a "property interest." If plaintiffs are not properly qualified for this Section 202 housing, they most likely have no property interest.

As to plaintiffs' Equal Protection claim, it seems clear that the attempt of the defendants to place handicapped persons in those Section 202 projects which were intended and constructed to house them, thus meeting the special and particular needs of each handicapped group is "rationally related" to the legislative intent in Section 202. The legislature wanted the beneficiaries of Section 202 to benefit from being so housed. Reserving § 202 projects built to house the elderly and physically handicapped for the elderly and physically handicapped seems rationally related to that purpose.[2]

Finally, the state law claims alleged by the plaintiffs also do not support the issuance of a preliminary injunction. First, these claims are simply pendent to the federal matters; if the unlikelihood of success on the merits of the latter comes to fruition, these claims would be dismissed. Second, it appears that these state claims may very well be preempted by the federal law in this area. *See, e.g., City of Boston v. Harris, supra,* 619 F.2d at 93–95. Accordingly, we cannot say that the likelihood of plaintiffs' success on the merits of their state law claims is at all substantial.

2. IRREPARABLE INJURY

We are unable to find that the plaintiffs have demonstrated the irreparable injury required to justify the issuance of a preliminary injunction. Initially, we note that the plaintiffs wish the court to consider such harms as are being done to all members of the proposed plaintiff class. This we may not do. The cases cited at oral argument by plaintiffs' counsel in support of his argument that a court may consider the interests of potential class members dealt with the potential dismissal, settlement or bar of potential class members' claims. *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974); *Haas v. Pittsburgh Na-*

2. Plaintiffs' claim that we must apply "strict scrutiny" is in error. An equal protection challenge to classifications based on mental illness is properly judged according to the "rationality" standard. *Doe v. Colautti,* 592 F.2d 704 (3d Cir. 1979).

*tional Bank*, 526 F.2d 1083 (3d Cir. 1975); *Greenfield v. Villager Industries*, 483 F.2d 824 (3d Cir. 1973). In those cases, the presiding court quite properly took into account potential class members' interests before taking action which would bar their claims once and for all. Here, plaintiffs would have us consider not the interests of potential class members whose causes of action are at risk in this litigation, but rather the speculative harm possibly being done to potential class members who may or may not litigate in this forum. This case has not yet been certified as a class action; it may never be. At this time, these plaintiffs are before us asking for a preliminary injunction, and it is *their* irreparable injury which must justify *their* request.

This having been said, we observe that none of the plaintiffs are without housing. Plaintiff Edge, in fact, was housed in Luther Arms at the time this complaint was filed. Her counsel informs us that she has since left of her own accord. Plaintiff Jacoby is also living in government subsidized housing. Plaintiff Cassell, while living in quarters which he believes to be inferior to those which should be his at South Village 2, nevertheless has a home. The sole harm being done to these plaintiffs in the absence of the requested injunction appears to be the fact that they will have to await the outcome of this litigation in order to get the relief they believe is theirs. But that is something that all litigants must do: await the outcome of their case.

It seems likely that the defendants would suffer significantly from the injunction requested: they would be required to expend sizeable amounts of time and money not previously allocated to solicit and process possibly hundreds of applications. If the litigation were terminated in defendants' favor, they would likely have to expend additional funds to contact the disappointed applicants. Other courts have considered the expense and disruption to these public projects from the granting of a requested preliminary injunction in evaluating such an application. *Stanback v. Harris*, 434 F.Supp. 320 (D.D.C.1977). In the end, these being projects funded by all citizens, the disruption and expense necessitated by the preliminary injunction plaintiffs requested would be borne by us all, thus implicating the public interest in opposition to the instant motion.

Plaintiffs having failed to demonstrate a likelihood of success on the merits of each and all of their claims; having failed to demonstrate wherein they are and will be irreparably injured *pendente lite*; and the interest of the public and current residents of the projects involved in this litigation weighing against plaintiffs request, we will deny the application for a preliminary injunction.

Counsel for defendant Pierce is requested to submit an appropriate form of order.