**Dr. Francesco D'IMPERIO and Quinton D'Imperio, Plaintiffs,**

**v.**

**UNITED STATES of America, Motel Dennis, Inc., John J. D'Andrea, Ronald Phelps, Calt, Inc., and John Doe and Richard Roe, unknown persons, Defendants.**

Civ. A. No. 83–1369.

United States District Court,
D. New Jersey.

Dec. 1, 1983.

Marion Percell, Lowenstein, Sandler, Brochin, Kohl, Fisher, Boyland & Meanor, Roseland, N.J., for plaintiffs.

Ronald H. Clark, Asst. U.S. Atty., Newark, N.J., John C. Hammock, Environmental Defense Section, Land and Natural Resources Division, U.S. Dept. of Justice, Dov Weitman, Environmental Protection Agency, Washington, D.C., for defendant, United States of America.

Thomas P. Foy, Hartman, Schlesinger, Schlosser & Foy, Mount Holly, N.J., for defendants, Motel Dennis, Inc. and John J. D'Andrea.

## OPINION

GERRY, District Judge.

The plaintiffs in this case are seeking a declaratory judgment to the effect that they are not liable for hazardous substance cleanup costs under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. § 9607. Further, they seek a declaration that if they contribute to the cost of cleanup, their actions are compensable under § 9607(a)(4)(B). Finally, they wish to enjoin the United States from continuing to refer to their tract of land, which appears on a proposed National Priorities List of hazardous dumpsites, as the "D'Imperio Tract."

The D'Imperios are the owners of a tract of land consisting of approximately 30 acres in Hamilton Township, New Jersey. They have owned the property since 1969. According to the complaint, prior to 1969, hazardous substances (including those enumerated in CERCLA, 42 U.S.C. § 9601(14)) were disposed on the property. In 1977, the New Jersey Department of Environmental Protection became aware of the presence of these substances on the property and ordered its prior owner, Motel Dennis, Inc., to properly remove the substances. Motel Dennis, Inc. did not comply, and no further steps were taken by the state. In 1980, the plaintiffs learned of the presence of the hazardous substances. In the spring of 1982, the United States Environmental Protection Agency released $250,000 from the Hazardous Substance Response Trust Fund ("Superfund") established under CERCLA (42 U.S.C. § 9631) for the purpose of studying the dumpsite. In a letter dated March 18, 1982, the EPA advised the D'Imperios that "conditions at the D'Imperio site have resulted in releases or threatened releases of hazardous substances ... which may present an imminent and substantial endangerment to the public health"; that the EPA had determined that Dr. Francesco D'Imperio "may be a responsible party with respect to the site"; and that if he failed to undertake an investigation of the site as a first step toward remedial activity, he "may be held liable under section 107 of CERCLA [42 U.S.C. § 9607] for all costs incurred by the United States Government in connection with the site." In January 1983, the EPA proposed to place the site on a National Priorities List (pursuant to 42 U.S.C.

§ 9605(8)(B)) of the most hazardous dumpsites in the United States.

In seeking a declaratory judgment, the plaintiffs first seek a judgment to the effect that they are not liable for any cost of cleanup of the site, since they fall within the defense to liability provided by 42 U.S.C. § 9607(b). Second, they seek a judgment to the effect that any costs they do incur are "necessary costs" within the meaning of § 9607(a)(4)(B), such that those costs are recoverable from either the Superfund or other parties responsible for the environmental damage. Finally, they seek an injunction restraining the United States from continuing to refer to the site as the D'Imperio Tract, as such reference is harmful to the reputations of the plaintiffs. The defendant, United States of America, has moved to dismiss as to these first two prayers for relief on the grounds that the controversy is not yet ripe for disposition. One reason the defendants cite for the lack of ripeness is that there has been no "final action" by the EPA, as is required by the Administrative Procedure Act for court adjudication. As to the prayer for injunctive relief, the USA seeks to dismiss the complaint as "patently frivolous."

■ Ripeness is a requirement for relief under the Declaratory Judgment Act's language of "actual controversy." As stated in *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941):

The difference between an abstract question and a "controversy" contemplated by the Declaratory Judgment Act is necessarily one of degree .... Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is substantial controversy, between parties having adverse legal interests of sufficient immediacy and reality to warrant issuance of a declaratory judgment.

■ It is clear, as the plaintiffs assert, that a party may seek a declaration of non-liability under the Declaratory Judgment Act. *Lumbermen's Mutual Casualty Co. v. Borden Co.*, 241 F.Supp. 683 (S.D.N.Y.1965); *Beacon Theatres v. Westover*, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959). The actual enforcement of a statute or regulation, or the commencement of a suit by a private party is no prerequisite of a suit to establish non-liability. *Doe v. Bolton*, 410 U.S. 179, 188, 93 S.Ct. 739, 745, 35 L.Ed.2d 201 (1974); *Lake Carriers Ass'n. v. MacMullan*, 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972). Nevertheless, not everyone who fears that a government agency or private party may seek to compel enforcement of a law or agreement may bring suit under the Declaratory Judgment Act. One's fears must be sufficiently real and immediate, based on the actions or representations of one's potential adversary or based on actions one desires to take which may run afoul of a law or agreement, valid or otherwise.

■ Here, the plaintiffs, as owners of the site, are understandably upset about the possibility of being held liable under 42 U.S.C. § 9607. While we do not consider the plaintiffs' fears "imaginary or speculative," (*see Steffel v. Thompson*, 415 U.S. 452, 459, 94 S.Ct. 1209, 1215, 39 L.Ed.2d 505 (1974)), in view of the letter they received stating that they "may be liable" and in view of the feasibility investigation about to be, or now being, undertaken by the EPA, yet we do not find their fears to be based on considerations sufficiently immediate to warrant a declaration of non-liability. The Government's letter speaks throughout with equivocation: the EPA "may spend public funds"; Dr. D'Imperio "may be a responsible party"; corrective action "may be necessary"; Dr. D'Imperio "may be liable." The letter does not require any action from the plaintiffs. At this point, as stated above, the Government has, in fact, begun to spend public funds to investigate the dumpsite, but the investigation is not for the purpose of assigning liability among the parties, but for the purpose of planning for a cleanup of the site, if necessary.

With regard to the letter the plaintiffs received, the affidavit of Francis Biros of the EPA indicates that it was only one of

some 3,000 letters sent out to potentially responsible parties having some relation to the several hundred sites on the National Priorities List. The affidavit states that the letters were sent out "without first determining who is legally liable"; that the "EPA did not, and does not, regard the notice letters as determinations of liability"; that the EPA "has not sought to recover any response costs ... or brought any other action against them"; and that the letters, in requesting the recipients to notify the agency of whether they would voluntarily undertake feasibility studies, was designed to help the EPA expedite its own investigations. In short, this case seems a long way from being referred to the Attorney General's office for action under § 9607.

▇▇▇ But it is not simply because the case fails traditional tests for ripeness that we must dismiss the plaintiffs' prayer for a declaration of non-liability. The provisions of the Administrative Procedure Act (*see* 5 U.S.C. § 704) require that only "final agency action" is subject to judicial review. "A preliminary, procedural or intermediate agency action or ruling not directly reviewable is subject to review [only] on the review of the final agency action." *Id.* The plaintiffs argue that under 5 U.S.C. § 702, "[a] person suffering legal wrong because of agency action is entitled to judicial review." However, the Act must be read as a whole (*see Ellsworth Bottling Co. v. United States,* 408 F.Supp. 280 (W.D.Okl. 1975)); thus, "agency action" referred to in § 702 must mean "final agency action." The term "agency action" is defined broadly to include "orders, licenses, sanctions, relief, or the equivalent," 5 U.S.C. § 551, and covers "every form of agency power, proceeding, action, or inaction." *FTC v. Standard Oil Co. of California,* 449 U.S. 232, 239, 101 S.Ct. 488, 493, 66 L.Ed.2d 416 (1980). Here, then, the "power" of the EPA to seek the institution of a liability suit would constitute agency action, but the notice letter is far short of a final decision that the Government undertake such a suit. Where, as here, the EPA cannot bring the suit itself but must refer the matter to the

Attorney General (*see* Executive Order 12286 of January 19, 1981, 46 Fed.Reg. 9901), it is less than certain what actions of the EPA would meet the finality requirement; it is clear, however, that the notice letter represents only the most preliminary of determinations. Clearly, a letter stating that a party "may be liable" is no more final than an FTC complaint stating that the agency had "reason to believe" that the named parties had violated the Federal Trade Commission Act. In the latter instance, however, the Supreme Court determined the complaint insufficient to constitute "final agency action." *FTC, supra.* *See also Toilet Goods Ass'n. v. Gardner,* 387 U.S. 158, 162–4, 87 S.Ct. 1520, 1523–4, 18 L.Ed.2d 697 (1967). As in *FTC,* here the notice letter is "not a definitive statement of position. It represents a threshold determination that further inquiry is warranted," *FTC, supra,* 449 U.S. at 241, 101 S.Ct. at 493, if it even represents that. Accordingly, a determination of non-liability would be premature at this time. Nor does the inclusion of the D'Imperio site on the National Priorities List (42 U.S.C. § 9604) represent a determination of liability. As is made clear in the Senate Report on CERCLA:

> The priority lists serve primarily informational purposes .... Inclusion of a facility or site on the list does not in itself reflect a judgment of the activities of its owner or operator ... nor does it assign liability to any person. Subsequent government action in the form of ... enforcement action will be necessary in order to do so.

Sen.Rep. No. 96–848, 96th Cong., 2d Sess. 60 (1980). Thus, none of the EPA actions undertaken to date—the notice letter, the listing on the National Priorities List, the early stages of a feasibility study—represent a finding of possible liability of sufficient immediacy to warrant declaratory relief.

One of the purposes of the "final agency action" requirement is to allow the agency the opportunity to "correct its mistakes and apply its expertise." *FTC v. Standard*

*Oil, supra,* at 242, 101 S.Ct. at 494; *Weinberger v. Salfi,* 422 U.S. 749, 765, 95 S.Ct. 2457, 2466, 45 L.Ed.2d 522 (1975). Here, the EPA, through the affidavit of Biros, has admitted that its findings of liability are so preliminary that it would be premature to even state that these findings represent a mistake in need of correction. Another basis for the "final action" requirement is that it allows the agency to decide where it is most important to invest its scarce investigative and prosecutorial resources, rather than have to defend against a plaintiff it might consider not worth investigating. Thus, the requirement seeks to prevent any delay or impediment to effective enforcement by the agency. *Dresser Industries, Inc. v. United States,* 596 F.2d 1231, 1236 (5th Cir.1979). We regard each of these considerations as significant, and added to what we have stated earlier, warrant a finding of non-ripeness. We, therefore, will dismiss the plaintiffs' prayer for a declaration of non-liability under 42 U.S.C. § 9607.

█ What we have stated above is equally applicable to the plaintiffs' suit as to their eligibility for reimbursement of costs incurred under § 9607(a)(4)(B). In order to seek recovery under this section, it is necessary for the plaintiff to prove that he himself is not liable for these costs. In view of the fact that we have declined to adjudicate the question of liability under § 9607(a) and (b), it also is premature to adjudicate the question of eligibility for reimbursement. We would view the matter differently if the plaintiffs had already incurred expenses in the cleanup of the site. Indeed, the language of the subsection states that the ultimately responsible parties "shall be liable for ... any other necessary costs of response *incurred* by any other person." (Emphasis added.) Thus, CERCLA seems to require actual, past outlay of expenses. Here, the plaintiffs have neither spent, nor do they propose to spend, funds "consistent with the national contingency plan." 42 U.S.C. § 9607. We do not suggest that their failure in this regard is irresponsible or delinquent; all we hold is that their actions to date provide no reason to delve into the question of liability and recovery of funds. The plaintiffs seem to argue that already they have incurred losses in that the Government, with their imminent permission, is about to enter their property, set up fences and start its feasibility study, and that this "taking" is compensable. But we do not believe that these expenses are of the type CERCLA contemplates as being recoverable under its provisions. Section 9607(a)(4)(B) contemplates recovery for "costs of response." "Response" is elsewhere defined as "removal ... [or] remedial action." All expenses thus far incurred *by the Government* are related to its feasibility study, a *pre-response* stage. If we are reading this section too narrowly, perhaps, we nevertheless believe that a broader reading still would not favor the plaintiffs' position, because to date they have not taken the sort of concrete steps toward planning a site cleanup which would make them eligible for a determination as to whether such a cleanup would be reimbursable. Accordingly, we will dismiss the declaratory judgment suit as to § 9607(a)(4)(B) as well.

█ Finally, we come to the claim for injunctive relief. Here, there can be no doubt as to ripeness, for the site is presently referred to as the "D'Imperio site," and the plaintiffs, if they are in fact harmed by this designation, are harmed now. Moreover, if the plaintiffs are entitled to relief, it is injunctive relief only to which they are entitled, since the Tort Claims Act (28 U.S.C. § 2680) prohibits a damage suit arising out of "libel, slander, or misrepresentation," which are the bases of this claim, since the harm alleged is a harm to reputation. The plaintiffs claim that they are entitled to an injunction because they had nothing to do with the creation of the hazard, contrary to the implication expressed by the naming of the site; and that the site is not entirely their property. At least half of the site, they claim, is owned by Calt, Inc. There are two reasons, however, why we must deny the injunction. The plaintiffs themselves, in using the word, "arbi-

trary," in referring to the designation of the site, are aware that the proper standard for setting aside agency action in a context such as this is where the action is "arbitrary, capricious, [or] an abuse of discretion." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 412, 91 S.Ct. 814, 821, 28 L.Ed.2d 136 (1971); *Stanback v. Harris*, 434 F.Supp. 320 (D.D.C.1977). Here, CERCLA § 105 (42 U.S.C. § 9605(8)(B)) mandates that the President (here, the EPA, by delegation) promulgate a National Priorities List. No guidance is provided by that statute regarding the mechanics of naming the sites on the list. It cannot be said that the naming of the site after one of its present owners is arbitrary. It is at least a rational decision, if not perhaps, the optimal decision, from the plaintiffs' point of view. Secondly, it would appear that the plaintiffs, if they are aggrieved by anything pertaining to the National Priorities List, must appeal to the District of Columbia Court of Appeals. 42 U.S.C. § 9613 provides that that is the proper place for "review of any regulation promulgated under this Act." The National Contingency Plan (42 U.S.C. § 9605), of which the Priorities List is a part, is a "regulation." *See Tinkham v. Reagan*, Civ. No. 83–140–L, filed April 14, 1983 (D.N.H.). Therefore, this court is without jurisdiction to issue an injunction, and the plaintiffs' complaint must be dismissed.

Since the parties in this case have submitted materials outside the pleadings in support of, and in opposition to, the motion to dismiss, the motion is properly treated as a motion for summary judgment. F.R. Civ.P. 12. Accordingly, the motion for summary judgment of the defendant, United States of America, will be granted.

The plaintiffs also make a pendent claim arising out of the suit against the United States of America. In their complaint, the plaintiffs allege that Motel Dennis, Inc. and John D'Andrea, the former owners of the D'Imperio tract, are liable for cleanup costs. In their claim against these defendants, the D'Imperios seek "indemnification against any and all losses, damages or claims which may be asserted against

plaintiffs under ... 42 U.S.C. § 9607"; and other "damages."

Since it has been determined that the plaintiffs' claims against the United States of America are not yet ripe for adjudication, the court must also hold that the plaintiffs' claims against Motel Dennis, Inc. and John D'Andrea are not yet ripe. No claims have yet been asserted against the plaintiffs, and it is possible that none will be asserted. This court is not going to adjudicate the issue of the plaintiffs' non-liability in this purely private context where it has declined to do so in the case between the plaintiffs and the Government. Moreover, having dismissed the federal case well before trial, it is appropriately within our discretion to dismiss the pendent claims as well. *See UMW v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Accordingly, the defendants' motion for summary judgment will be granted. The accompanying order will be entered.