**PACIFIC RESINS AND CHEMICALS INCORPORATED, Plaintiff,**

v.

**UNITED STATES of America, United States Environmental Protection Agency, Ernesta Barnes, and the State of Washington, Defendants.**

No. C85 387M.

United States District Court, W.D. Washington.

June 23, 1986.

Steve W. Berman, W. Keith Fendrick, Shidler McBroom & Gates, Seattle, Wash., for plaintiff.

Charles K. Douthwaite, Asst. Atty. Gen., Olympia, Wash., for Dept. of Ecology State of Wash.

Jackson L. Fox, Asst. U.S. Atty., Seattle, Wash., for E.P.A. and Barnes.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

### INTRODUCTION

McGOVERN, Chief Judge.

Pacific Resins and Chemicals (PR & C) is one of over 300 potentially responsible parties (PRP) for the Government's cost in cleaning up the Western Processing hazardous waste site. PR & C seeks declaratory and injunctive relief asking the Court to declare that it is not liable under the statutes pursuant to which the Western Processing case was brought and to enjoin the Government from taking any action against it under these statutes. PR & C also asks that if the Court determines it is liable, that its contribution should be based on the amount of waste it disposed at the site.

The Federal Defendants and the State move to dismiss arguing that the matter is not "ripe," EPA's actions are not "final," and PR & C lacks standing. Additionally, the Federal Defendants argue that pre-enforcement review is inconsistent with CERCLA, and the Declaratory Judgment Act does not create an independent basis for jurisdiction where it otherwise does not exist.

## PROCEDURAL BACKGROUND

Initially, the Environmental Protection Agency (EPA) brought an enforcement action under the Resource Conservation and Recovery Act (RCRA) and the Clean Water Act (CWA) in *United States v. Western Processing, et al.*, but later amended the complaint to add CERCLA counts and a new count under the RCRA imminent hazard provision. EPA obtained a preliminary injunction prohibiting Western Processing from operating in violation of the RCRA regulations.

Pursuant to 42 U.S.C. § 9604, EPA sent notice letters to over 300 persons believed to have generated or transported waste to the Western Processing site. These notice letters advised recipients that:

1. EPA had undertaken a federally financed action under CERCLA to investigate and control releases and threatened releases of hazardous substances at the Western Processing site;

2. EPA had identified the recipient as someone who might be liable for money spent by the Government for corrective action at the site (*i.e.*, a PRP);

3. EPA was offering the recipient the opportunity to voluntarily offer to finance remedial measures at the site; and

4. EPA was requiring information that the recipient was required to furnish under 42 U.S.C. §§ 9604 and 6927. (Federal Defendants' Memorandum at 10 and Appendix A.)

In response to the notice letters, a group of PRPs organized to negotiate with the Government. An agreement was reached concerning the surface (Phase I) clean-up in which 198 PRPs decided to participate. They were added as defendants, and a partial consent decree was entered August 28, 1984. PR & C did not participate in the settlement negotiations or agreement. Negotiations have been proceeding concerning the Phase II (subsurface) clean-up.

No decision has been made by EPA whether to take any action against PR & C pursuant to Section 107(a) of CERCLA whereby the United States could recover costs of EPA clean-up actions or Section 106 to compel PR & C to clean the site or face $5,000 per day penalties.

The Government explains the mailing of the notice letters:

Since EPA's purposes in mailing the notice letters is to promote expeditious response at as many sites as possible and to alert PRPs of possible response action by EPA at the site and of the opportunity to take response action in the place of EPA, EPA necessarily casts a large net in sending out the letters. Stanton Aff. ¶ 5. Likewise, since determining actual liability at all these sites could require months or years of careful investigation, EPA does not make such determination prior to sending out notice letters. Rather, EPA sends letters to persons whom EPA believes, based upon its preliminary review of available information, have some potential for being responsible parties as owners or operators of the sites or identified generators and transporters of the hazardous substances. Thus, the notice letters emphasize the preliminary nature of EPA's determination. Stanton Aff. ¶¶ 6, 7.

In addition, EPA also uses the notice letters to collect information pursuant to Section 104 of CERCLA and Section 3007 of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6927. Parties receiving notice letters with information requests must supply the pertinent data but they are not required to make any other kind of response or to take any action. Depending on the response that is received from the notice

letter recipients, EPA then decides on an appropriate course of action at the site. (Federal Defendants' Memorandum at 8–9.)

## DISCUSSION

EPA asserts, and the Court agrees, that its actions are not yet reviewable as requested by Plaintiff PR & C for five reasons.

(1) *No "final" agency action.*

The Federal Defendants (hereafter EPA) have cited six cases where such preliminary review has been sought and denied under the standard that pursuant to 5 U.S.C. § 704 decisions of federal administrative agencies must be "final" before judicial review is authorized. The criteria for determining when an agency decision is "final" and thus, reviewable is set forth in *FTC v. Standard Oil Co.*, 449 U.S. 232, 240–43, 101 S.Ct. 488, 493–94, 66 L.Ed.2d 416 (1980): (1) is the agency's action "definitive," or are there still further agency procedures that may narrow the areas of dispute or even moot the entire controversy? (2) does the agency action have either legal force or great practical impact on the party seeking judicial review? (3) would immediate judicial review serve either efficiency or enforcement of the regulatory scheme?

 EPA argues that its action of sending the notice letter is not definitive because the notice letter itself is equivocal and not the definitive filing of an enforcement action to force clean up or recover costs, and further that there are still a number of factors to be resolved before it is clear which parties face such action, *e.g.*, determination of a final remedial plan for clean up. The cited cases include one from the district of New Jersey where the court held that a similar "notice" letter did not constitute final agency action: "the power of the EPA to seek the institution of a liability suit would constitute agency action, but the notice letter is far short of a final decision that the Government undertake such a suit." *D'Imperio v. United States*, 575 F.Supp. 248, 252–53 (D.N.J. 1983). The Court also noted that the letter

"spoke throughout with equivocation," stating that *D'Imperio* "may be liable," "may be a responsible party," and "did not require any action from the plaintiff." *Id.*

In the other cited cases, neither a CERCLA Section 104 remedial investigation (which did not require any action by defendant nor assign liability), nor a Section 106 administrative clean-up order (which was held nonreviewable until a cost recovery action is filed) were held to be "final" agency actions. Another case dismissed a challenge to the EPA's remedial action plan saying that pre-enforcement review would frustrate the purpose of CERCLA by encouraging delays from litigation. The common theme in these cases is reflected in the Court's statement in *Aminoil, Inc. v. EPA*, 21 ERC 1817, 1818 (C.D.Cal.1984), that "the structure of the statute, its legislative history and cases construing it ... demonstrate that Congress did not intend to allow judicial review of such orders prior to commencement of either an enforcement action ... or a recovery action...."

The same arguments pertaining to absence of final agency action under CERCLA apply to preclude pre-enforcement review under RCRA and the CWA. Four cases are cited by the Federal Defendants reflecting this view of various EPA preliminary actions.

The Federal Defendants argue that the second factor (listed on page 5 herein) is also missing because PR & C has not been required to clean up any waste or take other steps at Western Processing, and the notice letter has no legal force beyond noting that PR & C potentially has liability.

Finally, concerning the third element, the Federal Defendants argue that judicial review now will neither serve efficiency nor the regulatory scheme, rather the effectiveness of CERCLA would be impaired.

(2) *Issue not "ripe" for review.*

 "Ripeness" is defined in *United States ex rel. Ricketts v. Lightcap*, 567 F.2d 1226, 1232 (3rd Cir.1977):

Ripeness concerns whether the legal issues at the time represented in a court

are sufficiently concrete for decision. Courts will not decide abstract legal issues posed by two parties; the issue in controversy must have a practical impact on the litigants.

The rationale is

to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effect felt in a concrete way by the challenging parties.

*Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). In evaluating the ripeness issue, the Federal Defendants consider the two factors from *Abbott Laboratories* and conclude in the case at bar that the issues are not ripe for judicial determination. The issues are not "fit" for review because as shown in the discussion at Section (1) above, there has been no final agency action. Second, PR & C will not suffer hardship if the court withholds review at this stage because (a) PR & C has demonstrated no urgency (since the notice letter was received by them on May 20, 1983), (b) PR & C is not in the position of having to comply or suffer penalties, and (c) liability will accrue only after trial of a cost recovery or Section 106 enforcement action.

(3) *PR & C has no standing; there is no case or controversy.*

■ A litigant must demonstrate a "distinct and palpable injury to himself" to have standing. *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). PR & C only asserts a potential for injury: the EPA may name it as a defendant in a lawsuit, and as a result of being named a PRP it faces the possibility of a contribution suit from the settling parties. EPA argues that no liability has yet been determined and the possibility of future liability is insufficient for standing. Thus, there is no injury sufficient to confer standing, and this cause of action must be dismissed.

■ (4) *CERCLA does not authorize review of EPA's response activities prior to initiation of an enforcement action under Section 106 or a cost recovery action under Section 107.*

In a unanimous opinion the Supreme Court held that

[w]hether and to what extent a particular statute precludes judicial review is determined not only from its express language, but also from the structure of the statutory scheme, its objective, its legislative history, and the nature of the administrative action involved.

*Block v. Community Nutrition Institute*, 467 U.S. 340, 104 S.Ct. 2450, 2454, 81 L.Ed.2d 270 (1984). The purpose of Congress in passing CERCLA was to establish the authority and funding for the prompt, unhindered clean-up of dangerous hazardous waste sites without the need to await a judicial determination of liability or even before any final agency determination of liability. *See, Lone Pine Steering Committee v. United States Environmental Protection Agency*, 777 F.2d 882 (3d Cir. 1985), *cert. denied*, — U.S. —, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986). Otherwise, continues the Federal Defendants' argument, the Government would become a defendant simply as a result of fulfilling its statutory duties. The Government points to a recent Senate Committee report that agrees with the need to avoid pre-enforcement review: "[a]s several courts have noted, the scheme and purposes of CERCLA would be disrupted by affording judicial review of orders or response actions prior to commencement of a government enforcement or cost recovery action." S.Rep. 99–11, 99th Cong., 11 Sess. 57, 58 (1985), *citing Lone Pine.*

The most recent appellate and district court decisions addressing the issue have concluded there is no pre-enforcement review under CERCLA. *United States v. Outboard Marine Corp.*, 789 F.2d 497, 505 (7th Cir.1986) (no judicial review even after adoption of Record of Decision), *Wheaton Industries, Inc. v. United States Environ-*

*mental Protection Agency,* 781 F.2d 354, 356 (3d Cir.1986); (no judicial review of declaratory judgment action seeking control of remedial study until cost recovery action is filed); *Lone Pine Steering Committee,* 777 F.2d at 886 (no judicial review until EPA files suit to recover costs); *B.R. McKay & Sons, Inc. v. United States,* 633 F.Supp. 1290 (D.Utah 1986) (no judicial review of *final* EPA action for a declaration of non-liability or liability under CERCLA prior to a cost recovery action); *Solid State Circuits, Inc. v. EPA,* 23 Env't Rep. Cas. (BNA) 1758 (W.D.Mo. Nov. 1, 1985) [Available on WESTLAW, DCTU database] (no subject matter jurisdiction under CERCLA for judicial review prior to CERCLA cost recovery action).

(5) *The Declaratory Judgment Act does not provide an independent basis of jurisdiction for plaintiff's complaint.*

■ "Ripeness" and "finality" are requirements for relief under the Declaratory Judgment Act (DJA). *D'Imperio,* 575 F.Supp. at 251; *Continental Bank & Trust Company v. Martin,* 303 F.2d 214, 215 (D.C.Cir.1962). Thus, there is no jurisdiction under the DJA to address the issues raised by PR & C.

In response to these arguments of EPA, PR & C has filed a 22–page brief which essentially argues that a final agency action is in dispute because (1) EPA refuses to delist PR & C as a PRP and so launches a process that could impose substantial liability on PR & C, and (2) there is no procedure left to PR & C to challenge the EPA's decision.

In its discussion of "final" agency action, PR & C cites one case, *J.V. Peters & Co. v. Ruckelshaus,* 584 F.Supp. 1005 (N.D.Ohio 1984), which is outside the weight of authority on this subject as it states, after noting that there is presently no liability fixed on plaintiff, "it should not be necessary for the plaintiffs to await the consummation of the threatened injury to obtain preventative relief." *Id.* at 1008. This view not only frustrates the implication inherent in the statutory scheme that litigation would delay clean-up at hazardous waste sites, *Lone Pine* at 887, it also is counterproductive in that the Court is asked to determine liability before sufficient facts are gathered respecting the amount and kind of hazardous waste at the site and the costs of completing a thorough clean-up.

As to ripeness, PR & C argues that the two-part test for ripeness is met by virtue of (1) the EPA failing to remove PR & C from the list of PRPs, therefore threatening it with fines and penalties, and (2) because PR & C has no other way of challenging the appropriateness of its being listed as a PRP other than in a declaratory judgment action. This argument, however, is not compelling because the EPA may press its case against the PRPs in the future, and then PR & C, if it is indeed one of the named defendants, may assert any and all defenses it has. If it is determined that it was wrongly made to expend funds, a Court sitting in equity may reimburse those expenditures. This is not a case of irreparable harm where injunctive relief is the only remedy.

Concerning the "standing" or case or controversy issue, PR & C again relies on the *J.V. Peters* case where threatened injury was sufficient to obtain relief. Again, this is not a case of threatened, irreparable harm. The threatened injury of which PR & C complains is one compensable at law.

Concerning the EPA's argument that CERCLA does not allow review of agency action now, PR & C again relies on its view that EPA's refusal to remove PR & C from the list of PRPs (even after PR & C cooperated by providing evidence showing that PR & C was a dissolved corporation two years before EPA began its action at Western Processing and that its wastes were not hazardous or toxic within the definitions of the applicable statutes) constitutes "final" determination. PR & C's arguments concerning the effect of the dissolution of the corporation and the technical toxicity argument are defenses that may be asserted in an enforcement or cost-recovery action.

Finally, PR & C argues that it is properly bringing this action under the Declaratory Judgment Act because the case is ripe and PR & C has standing as earlier argued.

In its reply, EPA argues, and the Court agrees, that the Court need not now address the issue of the "hazardous" nature of the waste. EPA also notes that cases on the issue of the toxicity of substances hold that CERCLA does not distinguish hazardous substances on the basis of quantity or concentration.

EPA points out that the *J.V. Peters* case misconstrued the statutory scheme of CERCLA and that the case is being appealed even though the Court's ultimate opinion produced a satisfactory result for the Government.

EPA argues that any action by Standard Equipment against PRPs is entirely irrelevant to EPA's actions, and EPA is not responsible for what Standard does.

Concerning PR & C being a dissolved corporation, it is not immune from suit under the statute of limitations contained in RCW 23A.28.250 because that state law cannot bind the United States Environmental Protection Agency under CERCLA.

The State of Washington joins in the Federal Defendants' motion to dismiss and adopts their memorandum dealing with the arguments of ripeness and standing.

Subsequent to the parties' briefing this motion for the Court, the Government advised the Court of recent opinions denying pre-enforcement review of clean-up or remedial orders issued by EPA. The *J.V. Peters* case is one of them. The Sixth Circuit held: (1) there is no private cause of action to review EPA response actions prior to a Section 107 cost recovery action; (2) EPA response action is not "final agency action," (3) Section 107 imposes strict liability, and (4) Plaintiff has an adequate remedy at law because it can raise defenses to a Section 107 cost recovery action if EPA's response action is inconsistent with the National Contingency Plan. This decision effectively undercuts PR & C's argument in this case. Although the *J.V. Peters* case involved a Section 104 response order, the case still applies here, conceivably with even more force, because a notice letter is an even more preliminary action.

Two other cases that came down after the briefing on this motion are district court cases from New York and Kansas. One, *Wagner Electric Corp. v. Lee Thomas*, 612 F.Supp. 736 (D.Kan.1985), denied pre-enforcement review of a CERCLA Section 106 order and the other, *E.I. duPont de Nemours & Co. v. Daggett*, 610 F.Supp. 260 (W.D.N.Y.1985), denied pre-enforcement review of a cleanup order issued under RCRA.

Thus, for the reasons articulated above, the motion of the Defendants to dismiss PR & C's cause of action is GRANTED and PR & C's cause of action is DISMISSED with prejudice.