**FRIENDS OF THE EARTH et al.,
Plaintiffs,**

v.

**Hugh L. CAREY et al., Defendants.**

**No. 74 Civ. 4500.**

United States District Court,
S. D. New York.

Aug. 28, 1975.

See also, D.C., 389 F.Supp. 1394.

Ross Sandler, David Schoenbrod, Natural Resources Defense Council, New York City, for plaintiffs.

Louis J. Lefkowitz, Atty. Gen. of N. Y., for New York State defendants, by James P. Corcoran, Asst. Atty. Gen., of counsel.

W. Bernard Richland, Corp. Counsel, New York City, for New York City defendants, by Alexander Gigante, Jr., New York City, of counsel.

Stuart Riedel, Gen. Counsel, New York City Transit Authority, for New York City Transit Authority defendant, by Walter J. McCarroll, James P. McMahon, Brooklyn, N. Y., of counsel.

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge.

This application for a preliminary injunction involves a needless morass of

procedural and practical problems. The instant application is a request in two parts. The first is that I preliminarily enjoin and restrain defendants from increasing the transit fare from 35 cents until such time as the Transportation Control Plan is fully implemented, and secondly, that I preliminarily enforce the Transportation Control Plan for the New York City Metropolitan Area submitted by the State of New York and approved pursuant to § 110 of the Clean Air Act, 42 U.S.C. § 1857 *et seq.*

It is necessary to determine each branch of these motions separately, but before doing so it may be of some assistance to the reader to know that this Court, on a prior occasion, denied the second request for relief. See 389 F. Supp. 1394 (S.D.N.Y.1974).

The grounds for the prior denial of the second branch of relief included the fact that the relevant governmental authorities were in the process of revising the Transportation Control Plan and a strong suggestion was made in that opinion that the United States Environmental Protection Administrator be somehow joined as a party should the necessity for some relief arise in the future.

### 1. *The question of the fare increase*

In the original complaint and in the original petition, the New York City Transit Authority (hereinafter "NYCTA") was not named in any way, although, the Metropolitan Transit Authority (hereinafter "MTA") was a named defendant.

Just after argument on the instant application, the Friends of the Earth (hereinafter "FOE") filed an amended complaint merely adding the NYCTA; the relevant allegations of the amended complaint remained the same. Upon disclosure that this was to be done, the NYCTA moved to dismiss on the grounds that the 60 day notice required by the statute, 42 U.S.C. § 1875h–2(b) had never been given to it. The notice required by that section was clearly one of statutory and procedural due process.

■ The fact is that the complaint does mention the MTA and apparently statutory notice was given to them. Plaintiffs argue that such statutory and procedural due process is unnecessary to add a new party to the action. Their contention is that the NYCTA and the MTA, which undeniably are totally separate entities, have certain officers and general counsel who are common to each, no such formal notice or a complaint with notice annexed, need be given to the NYCTA. It is claimed that actual notice was received and that therefore statutory notice should be waived. This argument reminds me of a little dog chasing his tail around a tree—a lot of noise and motion but without going anywhere. As such it is totally falacious. Standards of fairness and due process do not permit such sophistry nor will I permit it in this case.

Section 1857h–2(b) provides in pertinent part:

"(b) No action may be commenced—

under subsection (a)(1) of this section—

(A) prior to 60 days after the plaintiff has given notice of the violation(i) to the Administrator, (ii) to the State in which the violation occurs, and (iii) to any alleged violator of the standard, limitation, or order, or

(B) if the Administrator or State has commenced and is diligently prosecuting a civil action in a court of the United States or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any person may intervene as a matter of right."

To attribute any other meaning to this section would be to torture it all out of proportion.

But the plaintiffs suggest that the opposite conclusion must be reached and

cite for their proposition certain dicta in the case of *Conservation Society of Southern Vermont, Inc. v. Secretary of Transportation,* 508 F.2d 927 (2d Cir. 1974). There the Court said in construing the Federal Water Pollution Control Act

"Ordinarily, the 60-day notice provisions must be adhered to prior to initiation of suit under the FWPCA. The purpose of the 60-day notice procedure of § 1365 is to provide the Administrator time to launch governmental enforcement of the FWPCA in lieu of enforcement through private citizens suits. See Sen.Rep.No. 92–414, 92nd Cong., 1st Sess., 79–80 (1971); 1972 U.S.Code Cong. & Admin.News 3668, 3745.

"However, a crabbed construction of § 1365 which would elevate the 60-day rule to the position of an absolute barrier to earlier suit fails to account for § 1365(e), which preserves all private rights to sue for relief under any statute or common law. Moreover, a review of the legislative history of § 1365 and its prototype, § 304 of the Clean Air Act, supports the conclusion that the provisions for obtaining judicial review set forth in § 1365 were not intended to eliminate avenues previously available to citizens seeking enforcement of the Act, but were rather intended to provide citizens with an additional remedy. Section 304 of the Clean Air Act, 42 U.S.C. § 1857h et seq., was the model for the citizen-suit provision of the FWPCA, and is substantially identical to § 505 of the FWPCA."

The case of *Conservation Society of Southern Vermont, Inc. v. Secretary of Transportation, supra* is totally distinguishable from this case. In any event, the quoted language is merely dicta and is not controlling on this Court. I am sure that if the matter were squarely presented to the Circuit Court they would obtain the same result as I have.

■ The plaintiffs also argue that they are not bringing in the NYCTA as a real party, but merely for the purpose of obtaining an injunction against them on the question of the fare increase. If the injunction is to issue against the NYCTA, which has the authority and responsibility to change the fare, then it is absolutely clear that it is entitled to the same type of statutory and procedural due process to which other parties are entitled.

On this ground alone the requested relief must be denied.

■■ But the motion by the NYCTA to dismiss is also grounded on the fact that other than the caption, it is nowhere mentioned in the complaint. While I believe that Rule 8 of the Federal Rules of Civil Procedure requires " . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . .", I am also of the firm conviction that at least a defendant should be notified as to which of its actions give rise to the claim upon which the complaint is based.

■ Plaintiffs would argue that paragraph 44 of the complaint is ambiguous in that it refers to " . . . the Metropolitan Transit Authority (the Transit Authority) . . . " and that the reference to Transit Authority would of necessity include the NYCTA. To my mind this is clearly insufficient and for this reason also the complaint as to the NYCTA must be dismissed for failure to state a cause of action. Cf. Rule 12(b) of the Fed.R.Civ.P.

There is also substantial question in my mind as to whether this Court has subject matter jurisdiction over the fare increase. The action is brought pursuant to § 304(a)(1) of the Clean Air Act, 42 U.S.C. § 1857h–2(a)(1). The Transportation Control Plan at this point does not contain any language prohibiting a fare increase. FOE cannot seek to gain what might be a laudatory end by interpreting into the Transportation Control Plan something which is not there. Nor does the letter submitted by

the Environmental Protection Regional Administrator assist the plaintiffs in any way in this connection. It is clear that he and his agency knew or should have known the possibility of fare increases and the possibility of a concomitant increase in the use of motor vehicles at the time the Transportation Plan was being negotiated and put into effect. See, in particular, *Friends of the Earth v. U. S. Environmental Protection Agency,* 499 F.2d 1118, 1126 (2d Cir. 1974).

If the Environmental Protection Regional Administrator is serious about the stand taken in the letter to the Court that the fare increase will damage the air quality in the city, then he should have done something about it long ago, rather than to try to informally impose a Monday morning quarterback's view of the situation. Of course, if the Environmental Protection Regional Administrator had joined as a party to this action, perhaps I would be able to get some straight answers rather than to engage in pure speculation.

In any event, there is serious question of economics to which none of the parties have addressed themselves adequately. While it is true that the increase in fare may adversely affect air quality such as to make enforcement of other parts of the Transportation Control Plan inadequate, it also seems apparent that the NYCTA is in dire necessity. No thorough economic analysis of the situation has been presented. Suggestions have been made that the impending bridge tolls into the island of Manhattan be used to subsidize the mass transit system. While the question of bridge tolls is clearly part of the Transportation Control Plan, its actual implementation is brought about by the city's own fiscal plight. To use the bridge tolls in such a way may well be a question of "robbing Peter to pay Paul."

 For all of the reasons outlined above, the motion to stay an increase in the fare is hereby denied.

## 2. The question of the enforcement of the Transportation Control Plan

At the hearing and argument on the present application, plaintiffs contended that there were no issues of fact concerning the need for the preliminary injunction to enforce the entire Transportation Control Plan. After that hearing, plaintiffs also filed a motion for summary judgment which will be returnable on September 12, 1975. Defendants have yet to respond to the motion for summary judgment. Such response, as will be shown below, is unnecessary.

 To obtain a preliminary injunction without an evidentiary hearing it is necessary that no true issue of fact be involved. See *S.E.C. v. Frank,* 388 F.2d 486 (2d Cir. 1968). To obtain summary judgment it is similarly necessary that there be no true issue of fact. *Doehler Metal Furniture Co. v. United States,* 149 F.2d 130 (2d Cir. 1945).

 Since the time of the hearing and argument of the instant application, my chambers have been inundated with a plethora of paper emanating from the parties. From these documents it is clear that there exist many true issues of fact which must be resolved in a full evidentiary hearing. For example, the parties seem to agree that there were eight consent orders already entered into between the USEPA and the State. Allegation has been made in one of the many letters received from counsel for plaintiffs that these orders have been violated on numerous occasions since that time. It must be assumed that defendants would disagree with this allegation.

Another example may be found in the fact that the parties have advised that there are other orders presently under negotiation. There is clearly a question of fact as to what these orders might be and at what stage the negotiations are.

And, of course, an evidentiary hearing must be held in order to properly frame any such order for preliminary injunc-

tion since this Court is without sufficient information as to the claimed violations and the claimed negotiations.

 There is, of course, as more fully set out in my prior opinion, the question of policy. There I stated that the general policy is that the courts should not grant relief which requires continuous judicial supervision. *Unicon Management Corp. v. Koppers Co.*, 366 F.2d 199 (2d Cir. 1966). Here, as I have said before, supervision would be of a highly technical nature and in an area where there is already a federal agency charged with the enforcement of the Plan.

I would not be adverse to hearing the entire matter. In my prior decision I invited the parties to renew their applications providing that the Administrator of the USEPA was joined by February 25, 1975. 389 F.Supp. at 1396. Nothing was done at that time. Indeed, the present application was not brought on until July 30, 1975.

Under the circumstances, rather than have this case live in statistical limbo the action will be dismissed in its entirety unless the plaintiffs within 10 days serve upon the Administrator of the USEPA the proper notice under Section 42 U.S.C. § 1857h-2, or there is intervention by the Administrator within the same period of time. Should there be a failure in this regard, the defendants can submit a judgment of dismissal on 3 days' notice.

3. *The question of public participation in this action*

I have received any number of thoughtful and thought-provoking letters from various members of the public concerning this matter. Each and every one of them has been given due consideration. All of them are presently on file with the Clerk of this court. Some letter writers requested oral argument but because of the constraints on the time of this Court, that has been impossible. I do wish to note the appreciation of the Court for the concern and participation of the public in this matter.

4. *Conclusion*

The application to stay the increase in the transit fares is hereby denied. Plaintiffs' motion for summary judgment is hereby denied. The other application by plaintiffs is to be handled in accord with the directions contained in this opinion.

It is so ordered.